IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Karimu Hamilton, Plaintiff

: Civil Action

v. : No. 19-cv-2599

Christopher B. Flanagan, Andrew
Pancoast, Kevin Kochanski,
Rachel Ridgeway, Justin Ridgeway,
and Radnor Police Officers
Nos 1,2, 3 4 and 5, Defendants

## SECOND AMENDED COMPLAINT
### PARTIES

1. Plaintiff is Karimu Hamilton, an adult citizen and resident of Pennsylvania whose address is 30 Garrett Avenue, Bryn Mawr, Delaware County, PA 19139 (hereinafter referred to as "the premises"), owns the premises.

2. Defendant Christopher B. Flanagan is an adult citizen and resident of Pennsylvania who as all times relevant to this matter was employed by Radnor Township as Superintendant of Police, 301 Iven Avenue, Wyane, PA 19087.

3. Defendant Kevin Kochanski is an adult citizen and resident of Pennsylvania who works for Radnor Township as an inspector, 301 Iven Avenue, Wayne, PA 19087.

4. Defendant Andrew Pancoast is an adult citizen and resident of Pennsylvania who at all times relevant to this matter works as Code Enforcement Officer, located at 301 Iven Avenue, Wayne, PA 19087.

5. Rachel Ridgeway is an adult citizen and resident of Pennsylvania who resides at 32 Garrett Avenue, Bryn Mawr, PA 19010.

6. Justin Ridgeway is an adult citizen and resident of Pennsylvania who resides at 32 Garrett Avenue , Bryn Mawr, PA 19010.

7. Radnor Police Officer #1 is an adult citizen and resident of Pennsylvania employed by Radnor Township. 301 Iven Avenue, Wyane, PA 19087, whose name is not known.

1

8. Radnor Police Officer #2 is an adult citizen and resident of Pennsylvania employed by Radnor Township, 301 Iven Avenue, Wayne, PA 19087, whose name is not known..

9. Radnor Police Officer #3 is an adult citizen and resident of Pennsylvania employed by Radnor Township, 301 Iven Avenue, Wayne, PA 19087, whose name is not known.

10. Radnor Police Officers #4 is an adult citizen and resident of Pennsylvania employed by Radnor Township, 301 Iven Avenue, Wayne, PA 19087, whose name is not known..

11. Radnor Police Officer #5 is an adult citizen and resident of Pennsylvania employed by Radnor Township, 301 Iven Avenue, Wayne, PA 19087, whose name is not known.

## JURISDICTION AND VENUE

12. Jurisdiction is proper under 28 U.S.C. § 1331(a). The amount in controversy exceeds $150,000. The matter arises under the U.S. Constitution for violations of the 1st, 4th, 5th & 14th Amendments.

13. Venue is proper in the Eastern District as Plaintiff was injured, the incidents occurred, Defendants reside in, the premises involved is, and witnesses reside, in the Eastern District .

## FACTS

14. At all times relevant to this matter Defendants Flanagan, Kochanski, Pancoast and Radnor Township Police Officers #1, #2, #3, #4 & #5 were employees of the Radnor Township Police Department or Radnor Township, state actors acting within the course and scope of their employment under color of state law.

15.On December 3, 2018, Officer #1 came to the premises, after Plaintiff was told by Defendant Flanagan that he needed to get into the premises without stating a treason why, based on communications he had with Rachel and/or Justin Ridgway, who stated they

smelled gas. Defendant Officer #1 did not ask if he could enter. Without a warrant he entered the premises by using physical force to push past Plaintiff and conducted a search of the premises, claiming there was gas in the home.No emergency such as investigation of a violent crime, fleeing felon seen running into the house, active chase into the house, evidence that was about to be destroyed, significant risk of serious physical injury to the occupants or other facts justified a warrantless search. No one's health was in immediate danger when the warrantless search was conducted and PECO had not found any danger in the house. There was no significant smell of gas at the time. The search conducted exceeded any possible need to determine if there was gas as Defendant Officer #1 searched many areas of the home and stayed for a significant period of time beyond what was needed to determine if there was dangerous gas or any emergency. There was no emergency that required a search as there was no smell of gas or mention of cyanide when the search occurred.

16. Plaintiff contacted PECO. Its investigation that same day revealed there was no evidence of gas, a smell of gas or any dangerous condition in the home. A person with a meter on the premises confirmed there was no gas in the air and no gas smell.

17. On December 4, 2018, Plaintiff received a phone call from Children and Youth Services stating that a mandated reporter stated the premises was unfit for habitation by a child. Defendants Flanagan, Kochanski and Pancoast personally ordered that Children and Youth Services investigate the premises or order others to do so, to see if it was fit for human habitation and/or for Plaintiff and her daughter, a minor, to live there. Defendants Flanagan, Kochanski and 6 Radnor Township Police officers came to the premises and without a warrant or permission from Plaintiff, who owns the premises,

returned to the premises with a Child and Youth Services Worker. Officer #2 and that worker at 9 p.m.came to the premises, did not ask permission to come in. Plaintiff permitted the case worker to come in. The case worker said a police officer had to accompany her. Plaintiff never gave permission for a search of the premises. Despite that, Officer #2 and the case worker searched the entire home for an hour, stating that the water was off--which was not true--but there was no emergency such as gas or any dangerous substance that justified the search. No emergency existed to justify the search, which was done without a warrant or permission from Plaintiff.

18. The police report contains untruthful averments of fact such as Plaintiff did not have water service and there were holes in her steps. Plaintiff paid her bills on time and never ordered that the water service be turned off. It was turned off in June 2019 due to the actions of Defendants without the permission of Plaintiff or notice before this was done.There was no evidence that the water being on in the premises caused any risk to the health of anyone.

19. On January 15, 2019 Delaware County Office of Children and Youth Services (DCOCAYS) wrote a letter to Plaintiff stating, because the facts did not support allegations that the premises were uninhabitable and because Plaintiff and her daughter were not in danger as a result of living on the premises, "the agency has made a decision to not accept your family for general protective services."

20. DCOCAYS did not find the premises or any other location where Plaintiff and her daughter live were unfit for human habitation or that it would be unsafe for Plaintiff or her minor daughter to live there.

21. DCOCAYS case worker Melissa Ward told Plaintiff she had met with the Radnor Township Police Commissioner, Defendant Flanagan, who walked around the premises with her and told her the premises needed to be condemned as it was full of junk and unsafe for a child. Ward told her she called Plaintiff's daughter's school. Its report helped Plaintiff's case.

22. A week later Plaintiff received a Notice of Violation letter from Radnor Township Police Department.

23. On June 8, 2019 Defendants Justin and Rachel Ridgeway, whose premises is part of a twin home that includes 30 Garrett Avenue, stated they smelled gas, communicated with Defendants Flanagan, Kochanski and Pancoast that they smelled gas even though they knew there was no gas smell on the premises, and that PECO had found their earlier report of a gas smell or the presence of gas could not be substantiated, in an effort to intimidate Plaintiff, violate her right not to be evicted in violation of her due process rights and get her to leave the premises.PECO found there was no gas in the premises and in a report stated : "no leaks found." No evidence that there was ever dangerous gas on the premises was ever produced. Pancoast, without any scientific evidence, made the allegation there was cyanide gas on the premises. Under oath on July 2, 2019 he never mentioned cyanide gas or any other dangerous gas on the premises when he spoke of the condition of the premises although he alleged there was cyanide gas in the home in a affidavit of probable cause to support a warrant. No scientific proof of cyanide gas on the premises was ever produced.

24. On June 11, 2019 Plaintiff used a hand saw to trim an evergreen bush in front of her house and then walked across the street to return the saw to her neighbor from whom she

borrowed it. Defendants Rachel and Justin Ridgeway, knowing Plaintiff was using the tool for gardening and that she did not use it as a weapon or to threaten anyone, without asking Plaintiff what she was doing or determining if Plaintiff posed a reasonable risk of safety to anyone, called the Radnor Township Police and complained to Defendants Flanagan, Kochanski and Pancoast there was a woman walking up the street with a knife, knowing that Plaintiff was merely carrying a saw she used to trim a bush and carrying plants and deliberately creating a false impression of an emergency situation in an effort to bring about the arrest of Plaintiff without probable cause, deliberately lying to the police in a continuing conspiracy with police to force the eviction of Plaintiff from her home in violation of her rights to due process and to coerce her to agree to a search by police of her home without a warrant. On at least 3-4 occasions Defendants Rachel and Justin Ridgeway spoke to the other Defendants and other police officers of Radnor Township by phone or in person in an effort to get Plaintiff to move off the premises, use some false pretense to get officers onto the premises and search it without a warrant and/or have Plaintiff arrested without probable cause, to force her to bring the premises into compliance with Radnor Township ordinances.

25. Radnor Police Officers #3, #4 & #5 came to the scene, stopped Plaintiff with their loaded guns pointed at her and detained her at the corner on the street for 20-30 minutes. After they heard she was using it for gardening, they took the saw from her, returned it to the neighbor and ordered that she had to stay to wait for Defendant Flanagan to speak to her. Plaintiff was forced to wait for a substantial period of time--20-25 minutes more-- after it was clear no crime was committed. She was not free to go though at that time no reasonable person would have believed a crime was committed or

6

that Plaintiff committed a crime. Plaintiff complained about her being forced to stay and that there was no basis for the arrest or detention.

26. Defendant Flanagan arrived, told Plaintiff he was going to get into her home one way or another and if she did not let him into her home he would apply for an Administrative Warrant. He said he could arrange for her to have her home inspected that day and it would be "just like CYS" if she did not allow her home to be searched that day At that time she was not free to leave, she was forced to wait for and speak to him and there was no basis for believing Plaintiff committed a crime but he detained her for an additional period of time knowing there was no evidence she committed a crime merely to get entrance to her home though he could have applied for a warrant.

27. Plaintiff's family has resided on the premises for 77 years.

28. Radnor Township has a history of hostility and harassment towards Plaintiff. During the month of April, 2010, Plaintiff was living on the premises after her mother died. Plaintiff's mother's car was parked on the joint driveway shared by 30 Garrett Avenue and 32 Garrett Avenue, where it was legally parked as both landowners had an easement to use the joint driveway. Plaintiff's mother died one month before. Officers of the Radnor Township Police Department without making any effort to have the car moved, had it towed from the premises, without notice to Plaintiff.

29. Plaintiff complained to Radnor Township Police Officers that they had no right to tow the car.

30. In retaliation, they charged Plaintiff with criminal trespassing. Plaintiff was found not guilty. David H. Lang, the Judge in the case told the police officers "you better stop. I am warning you…this is an easement and she has the right of way…that fence will block her

back house and if there is a fire how will the department get to the back?..You cannot fence a property in like that."

31. The premises has a back house. There is furniture stored there but no conditions in it that made it unfit for human habitation or use. Despite this, Defendants Flanagan, Pancoast and Kochansky ordered that it be padlocked June 14, 2019 and have not given Plaintiff the key or permitted her in the building until about July 20, 2019. She is still not permitted to live in the back house as it has been condemned.

32. The backyard of the premises--30 and 32 Garrett Avenue comprise a twin home with one backyard-- has a grapevine which straddled the property line between the two properties. It was producing grapes before Defendants Ridgeway moved into 32 Garrett Avenue.

33. Defendant Flanagan told Plaintiff Defendants Ridgeway said the grapevine was on the Ridgeway's property and that if Plaintiff touched it he would cite her for criminal trespassing. He did no investigation to determine if the grapevine was on Plaintiff's property and ignored her statements that it was on the line stradding the properties. Flanagan treated the Rideways differently than Plaintiff in this matter.

34. Soon after that Defendants Rachel and Justin Ridgeway cut down the grapevine-- including the part on Plaintiff's side-- to its roots without Plaintiff's permission, and erected a fence in the backyard without permission from Plaintiff.

35. Plaintiff called Defendant Flanagan to report this. He took no action, never investigated if what Plaintiff said was true and took no action except to tell her to file a police report.As a result of that report she filed, Defendants took no action, never cited the Ridgeways for damaging property belonging to Plaintiff and made threats to Plaintiff

while supporting the destruction by the Defendants Ridegway on joint property of Plaintiff's and theirs. Plaintiff is African American. The Rideways are white.

36. On June 14, 2019 Defendants placed on the premises a sign "condemned--not fit for human habitation." That morning, without warning that they would do do, Defendants Flanagan, Kochanski, Pancoast and other Radnor police officers came to the premises at 6 a.m., ordered Plaintiff and her daughter to leave the premises, escorted them out, changed the locks on the premises, had it padlocked and would not permit her to return to enter the premises until her attorney requested it June 28, 2019. She only entered the premises again July 5, 2019 after it was ordered by Judge Barry Dozer of the Delaware County Court of Common Pleas on July 2, 2019, who also ordered the sign to be removed no later than July 3, 2019. Defendants also ordered that the water on the premises be turned off without notice to Plaintiff though she had paid her bill timely. At no time did Defendants provide written or oral notice of an administrative or other hearing to Plaintiff when she could contest the eviction and turning off of her water or have some official rule that it was legal.

37. Defendants Flanagan, Kochanski and Pancoast padlocked the back house on the premises June 14, 2019 though there were no conditions in it that made it unreasonably unsafe for habitation, and despite requests from Plaintiff and her counsel, have refused to let her have access to that back house until July 5, 2019.

38. Defendants did not inform Plaintiff in advance that she would be evicted from her premises, and that this would happen if certain conditions were not met on June 14, 2019.

39. Plaintiff was not provided with a list of items that had to be repaired, with a deadline by which the repairs had to be made, stating that failure to comply with the notice by a

9

stated date, unless extended, constitutes a violation, with sanctions for failure to do so as is required under 53 P.S.§10616.1 (a) & (c) (1-6), except for a Property Maintenance Violations document provided to her counsel July 2, 2019. Defendants did not provide Plaintiff with notice specifying the specific repairs required on the premises and requiring their completion to make the premises no longer unfit for human habitation within a reasonable time not less than 30 days as is required by 53 P.S. §14611 until that date.

40. Defendants alleged that plumbing issues on the premises, namely, the presence of effluent, some of which was being pumped into the street, and that this violated the Radnor Township Ordinance. No effluent was ever pumped into the street but was pumped into a container by Plaintiff, where it posed no danger to the health of any Radnor Township resident. Defendant Kochanski pumped the effluent into the street. Defendants Flanagan, Kochanski and/or Pancoast failed to direct the proper officer to examine the plumbing on the premises, report his findings to the department, make a drawing of the plan of such plumbing and drainage and sewer and suggest such changes that were necessary to make the same conform to the rules governing such matters as is required under 53 P.S. §4663.

41. Defendants Flanagan, Kaochanski and/or Pancoast informed Plaintiff of the plumbing problem but did not notify Plaintiff of the changes necessary to be made, state a time fixed to do so, or institute legal proceedings upon refusal to do so in an action before a magisterial judge as is required under 53 P. S. §4664 (except to the extent mentioned in a document provided to Plaintiff's counsel on July 2, 2019 and the January 18, 2019 Notice of Violation provided to Plaintiff.) No notice was given that eviction would occur by a certain date if certain action was not taken before Plaintiff's eviction.

42. Plaintiff never disobeyed any order of a magistrate or common pleas judge in this matter.

43. Plaintiff, who is African-American (a woman of color)-- has repeatedly complained to Defendants that she has been the victim of police overreach, filing of charges without probable cause in the past, that she was treated differently because of her race, that police made threats to her that she would be arrested for the same conduct--cutting down the grapevine--that the Ridgeways--who are white-- did who as a result were not charged with any crime, that the smell of gas was an excuse for an illegal search and that the searches of her home were illegal.

44. On June 13, 2019, Defendant Pancoast wrote an affidavit of probable cause for a search of the premises which stated there was cyanide gas on or emanating from the premises.It also stated that Plaintiff told firefighters the water had been disconnected and that she continued to use the toilets. She never made such statements and the water was not turned off as of June 14, 2019. The affidavit stated that a racoon was sheltering in the siding but this did not occur.

45. There was never cyanide gas on the premises nor did any test confirm this.

46. At a July 2, 2019 hearing in Media, PA, Defendant Pancoast testified and stated there were problems with the premises that justified the posting of the condemnation sign. He never mentioned cyanide gas. He produced no scientific test results to prove that there was effluent being emitted from the premise onto the street, of dangerous gas or cyanide.

47. On July 2, 2019, Plaintiff's counsel received a document entitled "Property Maintainance Violations." This had never previously been provided to Plaintiff. Nowhere

11

does it state there was cyanide gas on the premises, which was part of the justification for a search warrant.

48. Defendants Flanagan, Kochanski and/or Pancoast obtained a warrant from Ward 5. The premises are in Ward 7 of Radnor Township., which comprises the premises, To avoid Judge Lang-- who had found Plaintiff not guilty in the past and who presides over Ward 7, they obtained the warrant from a judge in Ward 5, a departure from normal procedure.

COUNT 1: ILLEGAL SEARCHES VIOLATING THE 4TH AMENDMENT

49. The averments of paragraphs 1-48 are incorporated by reference.

50. Defendants Officer #1(search #1) and Defendant Officer #2 (search #2)conducted 2 warrantless searches of the premises without any exigency or emergency justifying the search in violation of the 4th Amendment. They conspired together with Defendants Ridegway to create a false pretense for the searches. Defendants Ridgeway knew there was no evidence of cyanide gas or dangerous gas on the premises but repeatedly stated to police there was gas which was disproven by PECO, as an excuse to bring about two wider searches of the premises in violation of the right of Plaintiff not to be subject to 2 warrantless searches of the premises except if emergency circumstances were present. WHEREFORE, Plaintiff seeks entry of judgment in her favor and against Defendants Officer #1, Officer #2, Rachel Ridgeway and Justin Ridgeway in an amount in excess of $150,000, plus attorneys fees and costs.

COUNT 2: RETALIATION FOR COMPLAINING OF POLICE MISCONDUCT

51. The averments of paragraphs 1-50 are incorporated by reference.

52. As a result of the complaints made to Defendants about the lack of an exigency that justified 2 warrantless searches, continuing pressure to consent to warrantless searches, lack of notice that she would be evicted with her 6-year-old daughter from her home at 6 a.m. June 14, 2019 if certain conditions were not met, different treatment of her and Defendants Ridgeway for essentially the same conduct, Defendants Flanagan, Kochanski, Pancoast and Officers #1-#5 arrested her without probable cause, evicted her without notice or following of correct procedures for the violations of Radnor Township ordinances under PA law, used excessive force on her, refused to allow her back on the premises until a judge ordered it July 2, 2019 or to use the back house on the premises, and treated her differently than similarly-situated residents of Radnor Township.

WHEREFORE, Plaintiff seeks judgment against Defendants Flanagan, Kochanski, Pancoast and Defendants Officers #1-#5, and in her favor in an amount in excess of $150,000 plus costs, interest & counsel fees.

COUNT 3: EQUAL PROTECTION VIOLATION (SELECTIVE TREATMENT)

53. The averments of paragraphs 1-52 are incorporated by reference.

54. Plaintiff was similarly situated with other persons suspected of a ordinance violations in Radnor Township.

55. Defendants Flanagan, Kochanski and Pancoast chose to evict Plaintiff and her child from her home and to ban access to the back house on her premises without notice and not follow proper procedures to remedy the violations on the premises while those similarly situated were not evicted, were provided with deadlines to comply and a statement of sanctions if compliance did not occur by a stated date. Defendants Ridgeway

had effluent in or coming from their house because there was a strong smell of it but they were not evicted.

56. Defendants strategically and purposely discriminated against Plaintiff due to the her race, which is African-American. The other similarly-situated residents of Radnor Township who were treated differently were White.

WHEREFORE, Plaintiff seeks judgment against Defendants Flanagan, Kochanski and Pancoast and in her favor in an amount in excess of $150,000 plus costs, interest & counsel fees.

COUNT 4: EVICTION WITHOUT DUE PROCESS: VIOLATION of the 14th AMENDMENT

57. The averments of paragraphs 1-56 are incorporated herein.

58. Defendants Flanagan, Kochanski and Pancoast evicted Plaintiff and her daughter from the premises, would not permit any access until counsel intervened, despite the fact that access without living there would allow her to fix and repair the premises so it could comply with applicable ordinances and would not create a significant risk to the health or well-being of any person.

59. No testing proved any harmful substances substantially dangerous to the health and safety of any person was found on the premises and no scientific tests proved such were present.

60. Eviction from one's own home is a substantial deprivation of a human right that it should not occur without notice and a hearing but none occurred either before the eviction or post-eviction though a hearing on a preliminary injunction request was held July 2, 2019 when the judge ordered Plaintiff be provided access to her home during

certain hours. Despite this, Plaintiff has been banned from having access to the back house despite there being no evidence it contained ordinance violations. Defendants also ordered that the water be turned off from about June 14-July 12, 2019 though the water being turned on created no risk of to the safety of anyone.

WHEREFORE, Plaintiff seeks judgment against Defendants Flanagan, Kochanski and Pancoast and in her favor in an amount in excess of $150,000 plus costs, interest & counsel fees.

## COUNT 5: FALSE ARREST

61. The averments of paragraphs 1-60 are incorporated by reference.

62. On June 11, 2019 Defendants Flanagan, Officers 3, 4 & 5, Rachel Ridgeway and Justin Ridgeway conspired together, in an effort to gain access to the premises and or have Plaintiff move off the premises, to a) make a false report to the police that there was a woman carrying a knife in the street, knowing this was a mischaracterization of the situation and that Plaintiff was just returning a saw to a neighbor that she borrowed from her, that she never used it to threaten anyone or cause or attempt to cause physical harm to anyone, but to purposefully create a false impression that a crime was committed when they knew no crime was committed and no reasonable person would think one was committed, b) Defendants Officers 3-5 pointed loaded weapons at Plaintiff when she never made threats, pointed any weapon at anyone, attempted to escape or took any action that would cause a reasonable person to believe the safety of anyone was at risk, and no reasonable person would have thought there was a threat to the physical safety of anyone that justified pointing loaded weapons at Plaintiff and detained her far longer, with her being ordered not to leave, than was reasonably necessary to determine that no

crime had been committed, which they determined since she was not charged with a crime, c) Officers 3, 4 & 5 used force--pointing loaded guns at an unarmed woman just carrying a garden saw which she laid aside and plants, ordering her not to leave--beyond what was reasonable under the circumstances and d) Defendant Flanagan detained Plaintiff after ordering the officers to pull their guns and point them at Plaintiff and detain her until he arrived, knowing there were no facts present which would cause a reasonable person to believe Plaintiff had committed a crime, even if she had violated some ordinances due to the condition of her premises, arresting her without probable cause or filing of charges, to coerce her to allow him access to the premises without a warrant. WHEREFORE, Plaintiff seeks judgment in her favor and against Defendants Flanagan, Rachel Ridgeway, Justin Ridgeway and Officers #3, #4 & #5 in an amount in excess of $150,000 plus attorneys fees and costs.

## COUNT 6: USE OF EXCESSIVE FORCE

63. The averments of paragraphs 1-62 are incorporated by reference.

64. Defendants Officers 3-5, at the direction of Defendant Flanagan, pointed loaded weapons at Plaintiff and continiued to do so for a substantial period of time after she a) made no threats of physical injury, b) never attempted to flee, c) never used the garden saw in such as way that would cause a reasonable person to believe they were in physical danger, d) never refused to drop the saw or give it to the police, e) never raised it in a threatening manner and f) posed no danger to police or any member of the public.

65. At no time did anyone ever give her a ticket or charge her with a crime nor did anyone at the scene of her arrest believe after interviewing Plaintiff that she had committed a crime.

66. Plaintiff was fearful for her life having loaded weapons pointed at her when she was returning a garden tool to her neighbor and carrying plants; the weapons continued to be pointed at her after it was obvious she was not a threat to anyone.

WHEREFORE, Plaintiff seeks judgment in her favor and against Defendant Radnor Police Officers #3, #4 & #5 in an amount in excess of $150,000 plus attorneys fees and costs.

*Michael Considine signed August 9, 2019*

Date: August 8, 2019   J. Michael Considine, Jr., P.C.
By: s/J. Michael Considine, Jr.
1845 Walnut Street, Suite 1199
Philadelphia, PA. 19103
(215) 564-4000
PA Attorney ID No. 37294
Counsel for Plaintiff