IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARIMU HAMILTON, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| RADNOR TOWNSHIP, et al., | : No. 19-cv-02599-MSG |
| Defendants. | : |

**RICHARD A. LLORET**  February 16, 2023
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

The Plaintiff, Karimu Hamilton ("Hamilton" or "Plaintiff"), has brought suit against various employees of Radnor Township's Police Department and the Bryn Mawr Fire Company. Doc. Nos. 2, 58. The Delaware County Children and Youth Services ("DCYS"), an interested third-party in the civil action, filed a Motion to Quash a subpoena. Doc. No. 177. Judge Mitchell Goldberg randomly assigned review of the motion to a U.S. Magistrate. Doc. No. 184.

### PROCEDURAL HISTORY AND FACTS

Hamilton alleges gender and racial discrimination by state agencies and others in violation of Plaintiff's civil rights under federal law. The complaint invokes federal question jurisdiction. On August 8, 2019, Plaintiff filed a second amended complaint[1]

---

[1] Plaintiff initially filed suit *pro se* in the Eastern District of Pennsylvania on June 14, 2019. Doc. No. 2. Plaintiff brought claims of violation of due process, violation of "Color of Law and Deprivation of rights under the color of law under" 18 U.S.C. § 242, unlawful search under the Fourth Amendment, and racial and gender discrimination; she requested injunctive relief through a stay on the Township's proceedings and an emergency hearing to determine the constitutionality of the events leading to the complaint. *Id.* at 7; *see also* Doc. No. 4. Judge Goldberg denied injunctive relief and the Petition for an Emergency Hearing because Plaintiff failed to state a claim upon which relief can be granted. Doc. No. 6, at 2-3. Additionally, Judge Goldberg dismissed the pleadings without prejudice. Doc. No. 8. In response, Ms. Hamilton engaged Michael Considine as counsel. Doc. No. 14.

against Christopher Flanagan, Andrew Pancoast, Kevin Kochanski, Rachel Ridgeway, Justin Ridgeway, and Radnor Police Officers Nos. 1, 2, 3, 4, and 5.[2] Doc. No. 13. Plaintiff pleads six counts for relief: (1) illegal searches violating the 4th Amendment, (2) retaliation for complaining of police misconduct,[3] (3) an equal protection violation, (4) eviction without Due Process, (5) false arrest, and (6) use of excessive force. Doc. No. 13, at 12-17. Plaintiff filed a third amended complaint on September 17, 2020, adding the Bryn Mawr Fire Company as a named defendant. Doc. No. 58.

On December 3, 2018, an Officer from the Radnor Police Department responded to Plaintiff's house due to a report of the smell natural gas emanating from the property; Plaintiff alleges the Officer forcibly entered her house and conducted a search but found the report to be unsubstantiated. *Id.* at 2-3. The next day, the Delaware County Office of Children and Youth Services ("DCYS") called Plaintiff and relayed that a mandated reporter communicated the home was unfit for children and DCYS would initiate an investigation of the property. *Id.* at 3. At 9 p.m. December 4, a DCYS case worker and police officer conducted a search of Plaintiff's home without Plaintiff's permission and without a warrant. *Id.* at 4. On January 15, 2019, DCYS determined the report was unfounded. *Id.* Plaintiff alleges that Defendants Rachel and Justin Ridgeway, her neighbors, made false police reports against Plaintiff for threatening behavior, instigated retaliatory behavior against Plaintiff by the Radnor Township Police Department, and instigated an illegal condemnation of the Plaintiff's home. *Id.* at 5-8.

---

[2] Police Officers Nos. 1 through 5 were later amended via stipulation to named officers: Shawn Patterson, Stephanie Racht, Patrick Lacey, Sgt. Christopher Gluck, and Brett Geaves. Doc. No. 45.
[3] Count two of the Plaintiff's Third Amended Complaint against Defendants Flanagan, Kochanski, Patterson, Racht, Lacy, Gluck, Geaves, and Pancoast ("Radnor Individual Defendants") was dismissed with prejudice on June 22, 2021. Doc. No. 72.

Initial discovery disputes were brought to Judge Goldberg's attention on October 26, 2021. *See* Doc. No. 88. Discovery has been a rocky road. *See e.g.*, Doc. No. 132. Disputes continue. *See* Doc. Nos. 166-69, 177-78, 180-81.

On December 6, 2022, Plaintiff filed a motion to enforce a subpoena against DCYS. Doc. No. 166. The subpoena demanded production of documents relating to the December 4, 2018 visit by DCYS to 30 Garrett Ave., Bryn Mawr, PA 19010—the residence where Plaintiff lived with her daughter and the residence where the alleged police misconduct occurred. *Id.* at 1. In response, Radnor Individual Defendants requested the Court allow DCYS to produce the appropriately redacted documents and require Plaintiff to produce to all Defendants copies of documents obtained through the subpoena. Doc. No. 167, at 3 (asserting that Defendants were unaware of the subpoena, requesting Plaintiff's minor daughter's identity be protected and that defendants receive copies of the discovery per Fed. R. Civ. P. 45(a)(4)). On December 15, 2022, Judge Goldberg ordered DCYS to respond or object within seven days of the order. Doc. No. 169.

On January 12, 2023, DCYS filed a Motion to Quash and for Protective Order. Doc. No. 177. In the motion, DCYS argues that (1) the subpoena was improperly served pursuant to Rule 45(b)(1); (2) a protective order is appropriate under the Pennsylvania Child Protective Services Act ("CPSL"), 23 Pa. C.S. §§ 6301, 6339, and 6340, and 55 Pa Code Section 3130.44; (3) a protective order is also appropriate under the attorney work product doctrine. On February 6, 2023, Judge Goldberg referred the motion to quash to me. Disposition of the motion will require *in-camera* review of numerous documents. Doc. No. 184. Before I undertake that task, I want to disclose the law I will apply.

## DISCUSSION

### A.  Subpoenas Are Served and Are Met with A Motion to Quash.

Plaintiff failed to properly serve her subpoena of November 17, 2022. Her subpoena of January 13, 2023 was arguably out of time, as it was issued and served after the time for discovery had expired. A timeline of events relating to the subpoena is helpful.

- **November 17, 2022**: The First subpoena to DCYS is issued. Doc. No. 177, Exhibit A. Plaintiff indicates that "[i]t was sent by regular mail November 17, 2022." Doc. No. 180, at 1.

- **December 15, 2022**: Judge Goldberg orders DCYS to respond with documents or objection within 7 days. Doc. No. 169.

- **December 22, 2022**: DCYS writes to Plaintiff via email indicating their objections. Doc. No. 177, Exhibit B.

- **December 30, 2022**: Plaintiff requests to extend the discovery deadline. Doc. No. 170. There, Plaintiff indicates that "[o]n December 15, 2022 the court ordered [DCYS] to provide records. The order was served and counsel for that entity responded and stated they were looking for the records. Rather than file a Motion, the records likely will arrive within the new requested period for discovery." *Id*. at 1.

- **December 30, 2022**: Fact discovery ends. Doc. No. 165.

- **January 3, 2023**: Judge Goldberg denies the request to extend discovery. Doc. No. 174. The Order provides that DCYS "shall fully and completely respond to Plaintiff's subpoena or raise objections on or before January 13, 2023." *Id*. at 1. The Order also provides that "Plaintiff's counsel shall serve a

4

copy of this order upon [DCYS] and file a certificate of service on the docket."
*Id.*

- **January 12, 2023**: DCYS moves to quash the subpoena. Doc. No. 177.
- **January 13, 2023**: Plaintiff gets a new subpoena from the Clerk, with a return date of January 30, 2023. Doc. No. 180-2.
- **January 18, 2023**: Plaintiff receives proof of service. Doc. No. 180-3.
- **January 25, 2023**: Plaintiff responds to the motion to quash. Doc. No. 180.

I find that the Court's January 3rd order concerning the subpoena extended the time to serve and respond to the subpoena, but Judge Goldberg declined to generally extend the time for discovery.

**B.    The Second Subpoena and The Motion to Quash Are Timely.**

A motion to quash a subpoena is only timely if it is filed before the return date on the subpoena. *City of St. Petersburg v. Total Containment, Inc.*, 2008 WL 1995298, at *2 (E.D. Pa. 2008) (Stengel, J.). Objections to a subpoena must also be timely. If the subpoenaed party objects to providing the recommended information based on a privilege, the objection must be made within fourteen days of service of the subpoena. *In re Dep't of Just. Subpoenas to ABC*, 263 F.R.D. 66, 69–70 (D. Mass. 2009) (citing to Fed. R. Civ. P. 45(c)(2)(B)). Rule 45(c)(2)(B) outlines the 14-day requirement. An objection based on privilege must "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(b)(2)(A)(i)-(ii).

A subpoena is properly served on a third-party when it is delivered to the named individual by a person who is at least 18 years old and not a party to the litigation in

5

question. Fed. R. Civ. P. 45(b)(1). Serving a corporate entity requires serving an officer or agent of the corporation in the district where the corporation has had "sufficient contacts." *See International Shoe Co. v. Washington*, 326 U.S. 310, 320-21 (1945). Service on a government entity follows the same requirements. *See e.g., Ghandi v. Police Dep't of City of Detroit*, 74 F.R.D. 115, 121 (E.D. Mich. 1977). Additionally, when the served entity is a third-party, personal service is required. *Whitmer v. Lavida Charter, Inc.*, 1991 WL 256885, at *2 (E.D. Pa. Nov. 26, 1991) (Hutton, J.) (citing *Wright & Miller*, Fed. Prac. & Proc., § 2461 (1971)).

Some district courts in the Third Circuit have suggested that parties attempting to serve a subpoena may effect service via certified mail. *See New Jersey Bldg. Laborers' Statewide Benefit Funds v. Gen. Civil Corp.*, Civil Action No. 08-6056, 2009 WL 2778313, at *2 (D.N.J. Sept. 1, 2009) (the Court did not find the third-party in contempt for failing to respond to the subpoena, because it was not properly executed, but found that, in certain occasions, certified mail may satisfy service requirements); *but see Alfamodes Logistics L.L.C. v. Catalent Pharma. Solutions, LLC*, 2011 WL 1542670, at * 1 (E.D. Pa. Apr. 25, 2011) (Pratter, J.) (approval of the use of certified mail is a minority position). I hold that "absent compelling circumstances that would justify a departure from the wider accepted interpretation of those courts in our circuit, circumstances which do not exist here, the generally-accepted interpretation will be employed." *Fiorentino v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2012 WL 12861600, at *2 (M.D. Pa. Jan. 6, 2012) (quashing a subpoena that was not personally served on the named deponent). I find that the subpoena of November 17, 2022, was not properly served.

6

I also find that the court's order of January 3, 2023 intended to resolve the merits of the dispute over DCYS information rather than penalize technical non-compliance with the service rules. Doc. No. 174. Accordingly, I find that the subpoena of January 13, 2023, was served within the time contemplated by the court's order of January 3, 2023. *Id.* I deny the motion to quash because it depends upon the argument that the first subpoena was not properly served, and the second subpoena was untimely.

### C. The Request for A Protective Order Will Be Decided After Review of Documents.

That leaves the motion for protective order. DCYS argues that the information sought in the subpoena should be withheld, urging entry of a protective order to that effect. Regardless of whether the motion to quash is denied, the request for a protective order should be considered on the merits: "lack of timeliness alone is not a death knell for [a third party's] claim of privilege." *In re Dep't of Just. Subpoenas to ABC*, 263 F.R.D. at 70.

Upon a finding for good cause, the court may issue a protective order limiting the scope of the discovery sought in a subpoena. *Fiorentino*, 2012 WL 12861600, at *4. (internal citations omitted) (collating citations). There are few limitations on what information the Court can order withheld. *Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. S. Dist. Iowa*, 482 U.S. 522, 566, (1987) (per Rule 26, "[a] court may make any order which justice requires to limit discovery, including an order permitting discovery only on specified terms and conditions, by a particular discovery method, or with limitation in scope to certain matters").

Though DCYS relies upon a state law, the CPSL, as the basis for its request for a protective order, federal privilege law controls. *See Richard Roe W.M., et al, Plaintiffs,*

7

*v. The Devereux Foundation*, 2023 WL 1862290 (E.D. Pa. Feb. 9, 2023) (Brody, J.) (summarizing Third Circuit case law and deciding whether the CPSL prevents discovery of CYS information); *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3d Cir. 1982) (F.R.E. 501 governs privilege issues in federal question cases).

> Federal Rule of Evidence 501 provides that the privileges of a witness
>
> shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness … shall be determined in accordance with State law.

F.R.E. 501. "Under this rule, in federal question cases the federal common law of privileges applies" but "[w]here state law provides the rule of decision . . . state privilege law will govern." *Wm. T. Thompson Co.*, 671 F.2d at 103 (citing to *Gannet v. First National State Bank of New Jersey*, 546 F.2d 1072 (3d Cir. 1976); *Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978) (diversity jurisdiction)); *see also Wright & Miller*, 19 Fed. Prac. & Proc. § 4512 (3d ed.) (noting that it is "clear that federal privilege law will apply when both state and federal claims are present in the same action," particularly when a court exercises supplemental jurisdiction over state law claims under 28 U.S.C. § 1367).

In *Richard Roe*, Judge Brody found that one federal question count was sufficient to compel the application of federal privilege law, even though there were more Pennsylvania law counts in the litigation. Judge Brody held that even though the CPSL "protect[s] important confidentiality interests, state law privilege does not control in this case. It is settled law in this circuit that 'when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule.'" *Richard Roe*, 2023 WL at *2 (citing *Wm. T. Thompson Co.*, 671 F.2d at 104). Further, "[f]ederal question jurisdiction does not exist

8

in shades of gray—a federal court either has it or does not. As long as this remains a federal question case, federal privilege law governs." *Id*. It follows that the same rule applies here, because federal constitutional and statutory claims predominate in this action.

Courts can recognize new privileges under the federal common law of privilege. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990); *see* Fed. R. Evid. 501 (authorizing courts to recognize privileges "in the light of reason and experience"). *Pearson v. Miller*, 211 F.3d 57 (3d Cir. 2000) provides a framework for deciding when federal law should adopt a state law privilege. The court in *Pearson* rejected the adoption of a confidential informant privilege, based on the CPSL, but approved the entry of a protective order under Fed. R. Civ. Pro. 26(c) that controlled the release of sensitive information protected by the CPSL. *Id*. at 72; *see Kane v. Chester Cnty*., No. 12-6649, 2016 WL 320589, at *4-5 (E.D. Pa. Jan. 26, 2016) (Leeson, J.) (allowing limited discovery of CPSL-covered records based on "the flexible approach recommended by the *Pearson* court").

The CPSL provides that reports of child abuse and other information regarding alleged child abuse "in the possession of the department or a county agency shall be confidential." 23 Pa. C.S. § 6339.[4] "Upon a written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the Statewide database or in any report filed pursuant to

---

[4] Deemed unconstitutional under Pennsylvania law in *C.S. v. Commonwealth, Department of Human Services, Bureau of Hearings and Appeals*, 184 A.3d 600 (Pa. Com. Ct. 2018). In *C.S.*, the court found that the provision in the CPSL prohibiting the subject of the child abuse inquiry from using transcripts of witness testimony during a child abuse expunction proceeding violated due process. *Id*. at 604. The Court found withholding the transcript of an adverse witness' prior testimony was a violation of due process; the Court specifically acknowledged that the information sought by the Petitioner would not "compromise the CPSL's confidential reporting system or the privacy interests of the parties involved." *Id*. at 614.

9

section 6313 (relating to reporting procedure)." 23 Pa. C.S.A. § 6340(b). Plaintiff was the subject of a report, and so is entitled to a copy of all information, except as prohibited by § 6340(c). Section 6340(c) provides that, except in circumstances that do not apply here, because "the release of data by the department . . . that would identify the person who made a report of suspected child abuse or who cooperated in a subsequent investigation is prohibited. Law enforcement officials shall treat all reporting sources as confidential informants."

In *D.M. v. Cnty. of Berks*, No. 12-6762, 2013 WL 3939565, at *6 (E.D. Pa. July 30, 2013), Judge Baylson concluded that disclosure should not be permitted when the subpoena is "a clear fishing expedition" or its purpose is to "gratify the moving party's curiosity or vengeance[.]" *Id.* (cleaned up) (citing to *Carbajal v. Village of Hempstead*, 2003 WL 23138447, at *2 (E.D. NY 2003) (Boyle, J.); *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *Rosser v. City of Philadelphia*, No. 05–514, 2005 WL 1388013, at *1 (E.D. Pa. 2005)). Disclosure should be permitted when the "trial court determines that the identity of the informer or the contents of his/her communication is essential to a fair determination of a cause." *Id.*

Judge Leeson applied the seven factors identified in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995), to determine whether to grant a protective order controlling disclosure of CPSL protected information:

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;

10

> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

*Kane,* 2016 WL 320589, at *2 (citing *Glenmede*, 56 F.3d at 483 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994))). Given the holding in *Pearson*, which rejected the adoption of a confidential informant privilege, based on the CPSL, but approved the entry of a protective order under Fed. R. Civ. Pro. 26(c) (*see* 211 F.3d at 72), it is appropriate to account for the policy considerations undergirding the confidential informant's privilege, discussed in *D.M.*, within the framework of the factors identified in *Glenmede* and applied by Judge Leeson in *Kane*.

Applying the *Glenmede* factors, I find that, first, disclosure of the identity of the person who lodged a complaint with DCYS (the confidential informant, or "CI") will compromise a reasonable privacy expectation of the CI. Second, the information is being sought for a legitimate litigation purpose, that is, if the CI is one of the defendants in this case it would lend some support to Plaintiff's claims of a link between DCYS proceedings and the defendants' alleged improper motives. To put it more succinctly, the subpoena is not an improper fishing expedition. Third, disclosure of the information will cause the CI embarrassment, or at least reasonable discomfort. Fourth, confidentiality is being sought over information important to public health and safety, in that the preservation of the secrecy of a CI's identity is an important means by which child welfare is fostered. Fifth, the sharing of information among litigants will promote fairness and efficiency in this litigation. Sixth, the DCYS, who will benefit from the order of confidentiality, is a public entity. Seventh, protecting the CI's identity involves issues important to the public, as expressed by the Pennsylvania legislature through the CPSL.

## CONCLUSION

Balancing these considerations, I find that if the CI is a defendant or related party that fact should be disclosed to the plaintiff, with appropriate safeguards against more general disclosure. I find that under that circumstance, disclosure would be important to a "fair determination" of this case. *Cf. Roviaro*, 353 U.S. at 60–61. If the CI is not a defendant or related party, his or her identity should be withheld. My review of the documents submitted for *in camera* inspection will be guided accordingly. If I encounter attorney-client communications or attorney work-product along the way, I will apply well-known federal standards to the question of disclosure. *See, e.g.*, *In re Grand Jury*, 705 F.3d 133, 150–51 (3d Cir. 2012).

I invite — but do not require — the interested parties to submit supplemental memoranda addressing any concerns they have with the analysis in this opinion. An appropriate order will issue after I have reviewed the documents. The parties' memoranda will be limited to 5-pages in length and are due one week from the date of this opinion.

BY THE COURT:

  */s/ Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge