IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARIMU HAMILTON, <br>                 Plaintiff, <br><br> v. <br><br> CHRISTOPHER B. FLANAGAN, <br> ANDREW PANCOAST, KEVIN KOCHANSKI, <br> RACHEL RIDGEWAY, JUSTIN RIDGEWAY; <br> SHAWN PATTERSON, STREPHANIE RACHT; <br> PATRICK LACEY, SGT. CHRISTOPHER <br> GLUCK, BRETT GEAVES, and BRYN MAWR <br> FIRE COMPANY, <br><br>                 Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **AFFIRMATION** <br> **IN SUPPORT OF** <br> **MOTION FOR** <br> **SUMMARY JUDGMENT** <br><br><br> CIVIL ACTION <br> Docket No. 2:19-cv-2599-MSG |

ROBERT J. COSGROVE, an attorney duly admitted to practice law in the United States District Court for the Eastern District of Pennsylvania and the Courts of the State of Pennsylvania, hereby affirms under penalty of perjury:

1. I am a general partner of the law firm of WADE CLARK MULCAHY LLP, attorneys for defendant BRYN MAWR FIRE COMPANY ("BMFC").

2. I submit this declaration in support of BMFC's motion for summary judgment against plaintiff KARIMU HAMILTON ("Hamilton") as provided by Rule 56 of the Federal Rules of Civil Procedure.

**INTRODUCTION**

3. The instant action arises out of several encounters between Hamilton and various local entities, including Radnor Township Police Department ("RTPD") and BMFC. Hamilton alleges that RTPD and BMFC conspired with her neighbors, Justin and Rachel Ridgeway, to create

a pretense to conduct warrantless, illegal searches of Hamilton's home at 30 Garrett Avenue, Bryn Mawr, PA 19139 (the "Premises").

4. There is absolutely no support in the record for Hamilton's allegations that BMFC conducted illegal, warrantless searches of the Premises in violation of Hamilton's Fourth Amendment rights. Hamilton testified under oath that she consented to BMFC's entrance into the Premises on December 3, 2018, a fact that is supported elsewhere in the record.

5. As for the alleged illegal search that occurred on June 8, 2019, Hamilton has advanced no evidence to establish that BMFC ever entered the Premises on that date. Further, even if Hamilton had provided evidence that BMFC entered the Premises on June 8, 2019, such entry would have been permissible due to the fact that BMFC noted odors of both gas and smoke, which plainly constitutes exigent circumstances.

6. For the reasons that will be discussed at length herein, BMFC contends that a finding of summary judgment in BMFC's favor is both appropriate and necessary. Hamilton has not established that BMFC violated her Fourth Amendment rights, and the undisputed facts in this matter plainly establish that no reasonable jury could find in Hamilton's favor on her Fourth Amendment claims.

**PROCEDURAL BACKGROUND**

7. On June 14, 2019, Hamilton filed a motion for leave to proceed in forma pauperis and a complaint against Radnor Township, Radnor Township Police Department, and Radnor Township Department of Community Development for alleged constitutional violations. *See* Compl., June 14, 2019 (ECF No. 2), **Exhibit H**.

8. On June 20, 2019, Hamilton filed an Amended Complaint against Radnor Township, Radnor Township Department of Community Development, Radnor Township Police

Department, Christopher Flanagan, Kevin Kochanski, Andrew Pancoast, Marie Carbonara, Bryn Mawr Fire Department, Dan Kincade, Radnor Township Manager Robert Zienkowski, and Radnor Township Commissioner Sean Farhy. *See* First Am. Compl., June 20, 2019 (ECF No. 5), **Exhibit I**.

9. On June 25, 2019, Hamilton's Motion for Leave to Proceed in Forma Pauperis was granted and her Amended Complaint was stricken. Hamilton was given leave to file a Second Amended Complaint within 30 days.

10. Hamilton filed her Second Amended Complaint on August 9, 2019, against Christopher B. Flanagan, Andrew Pancoast, Kevin Kochanski, Rachel Ridgeway, Justin Ridgeway, and Radnor Police Officers Nos 1, 2, 3, 4 and 5. *See* Second Am. Compl., Aug. 9, 2019 (ECF No. 13), **Exhibit J**.

11. On September 17, 2020, Hamilton filed her Third Amended Complaint against Christopher B. Flanagan, Andrew Pancoast, Kevin Kochanski, Rachel Ridgeway, Justin Ridgeway, Shawn Patterson, Stephanie Racht, Patrick Lacey, Sgt. Christopher Gluck, Brett Geaves, and Bryn Mawr Fire Company, alleging constitutional violations under the First, Fourth, and Fourteenth Amendments of the United States Constitution. *See* Third Am. Compl., Sep. 17, 2020 (ECF No. 58), **Exhibit K**.

12. Hamilton's allegations stem from multiple encounters between Hamilton and the defendants. *See* **Exhibit K.**

13. Based on these encounters, the Third Amended Complaint's First Count alleges that BMFC violated Hamilton's Fourth Amendment rights by conducting illegal searches of the Premises. *See* **Exhibit K**.

## FACTUAL BACKGROUND

*The December 3, 2018 Incident*

14. On December 3, 2018 (the "December Incident"), RTPD and BMFC were called to the Premises following reports of an odor of gas. *See* R. Ridgeway Dep. 22:23-24, 23:1 (Dec. 14, 2022); **Exhibit D**. *See* Patterson Dep. 15:9-12 (Nov. 7, 2022); **Exhibit B**. *See* Hamilton Dep. 21:21-24 (Nov. 7, 2022); **Exhibit A**.

15. BMFC first entered Rachel and Justin Ridgeway's home at 32 Garrett Avenue (the "Ridgeway Residence") and conducted a gas reading. **Exhibit D**, 23:13-21.

16. BMFC then went to the Premises, which adjoins the Ridgeways' home. **Exhibit B**, 15:4-5 (noting that the homes are adjoining); **Exhibit D**, 23:19-21 (noting that BMFC entered the Ridgeway Residence first).

17. Hamilton testified that she knew the two BMFC firefighters who knocked on her door. **Exhibit A**, 21:16-20.

18. BMFC and/or RTPD informed Hamilton that there may be a gas issue in the Premises. **Exhibit A**, 21:21-24; **Exhibit B**, 15:2-5.

19. Hamilton consented to BMFC entering the Premises to check for gas. **Exhibit A**, 23:12-18. When asked to describe what happened when RTPD and BMFC arrived at the Ridgeway Residence and the Premises on December 3, Hamilton testified: "Well, really the officer didn't knock on the door first, the fire department did and I know them. They were actually my neighbor's children. So I knew who they were, They were volunteer firemen." **Exhibit A**, 21:16-20. Hamilton testified further: "I let them [BMFC] in. I know them. I let them in." **Exhibit A**, 23:12-18.

20. The fact that Hamilton consented to BMFC entering the Premises is corroborated by multiple sources. In his deposition, Officer Shawn Patterson, the officer who accompanied

BMFC at the Premises, testified that Hamilton consented to BMFC entering the Premises. **Exhibit B**, 14:16-24, 15:1-8.

21. Further, RTPD's police report reads: "[a]t 1646 Hrs, BMFC was dispatched to 32 Garrett Ave [the Ridgeway Residence] to measure the gas readings in the home. BMFC reports having trace readings. A female from 30 Garrett Ave [the Premises] allowed BMFC entrance to make readings of the levels within the home." *See* RTPD Dec. 3, 2018 Report, p. 4, **Exhibit C**. The police report reads further: "BMFC reports having reading between 0.5 and 1.5 of cyanide gas and the place was vented and those levels dropped to trace amounts. The resident [Hamilton] advised she had been without water for 2 weeks and the gas probably seeped in from the pipes." **Exhibit C**, p. 4.

*The June 8, 2019 Incident*

22. On June 8, 2019 (the "June Incident"), BMFC received a dispatch at 15:51:23 to the Ridgeway Residence. *See* BMFC June 8, 2019 Report, **Exhibit E**.

23. BMFC's incident report indicates that the dispatch was for "ODOR OF SMOKE IN THE HOUSE." **Exhibit E**.

24. BMFC arrived at the Ridgeway Residence at 16:03:59. **Exhibit E**.

25. By 16:11, fewer than eight minutes later, BMFC had cleared the scene. **Exhibit E**.

26. BMFC was dispatched because of a 911 phone call made by R. Ridgeway in which she indicated that there was a smell at the Premises. R. Ridgeway Dep., 9:21-23. The narrative of BMFC's report reads, in part: "Upon arrival at 32 Garrett Ave [the Ridgeway Residence] there was a strong odor of sewer gas. Checked the residence and found no leaks and got 0 readings on the meter." **Exhibit E**.

27. Daniel Kincade ("Kincade"), the fire chief for BMFC, was present for the June Incident and testified regarding the events of that day. *See* Kincade Dep., 6:10-12 (Oct. 7, 2022), **Exhibit F**. Kincade testified that while he was in the Ridgeway Residence, he smelled something that "smelled like a torch burning." **Exhibit F**, 19:7-10. Kincade further testified that it smelled like smoke in the Ridgeway Residence. **Exhibit F**, 21:10-12. According to Kincade, there was a man working in the Premises soldering sewer pipes in the basement, which may have contributed to the smells of smoke and sewer gas. **Exhibit F**, 16:8-19, 19:13-17.

28. In addition to the smell of smoke present in the Ridgeway Residence, there was also a "strong odor of sewer gas." **Exhibit E**. Kincade testified that there was "definitely" an odor of sewer gas in the first floor of the Ridgeway Residence, stating further "if it was in [the Ridgeway Residence] the odor would also be in [the Premises]." **Exhibit F**, 19:13-21.

29. Regarding the smell from both the December and June Incidents, Rachel Ridgeway testified: "It smelled like raw sewage or sewer gas. I'm not an expert so I don't know what it was that I was smelling, but it was a very, very foul smell." **Exhibit D**, 23:4-9; 26:19-21 (noting that her call to police on June 8, 2019 was for the same smell as her December 2018 call).

30. BMFC believed that both of the odors, of sewer gas and of smoke, were coming from the Premises. **Exhibit F**, 19:5-17, 21:10-15 (noting that the odor of smoke was coming from the torch burning in the basement of the Premises and that the plumber at the Premises was working on sewer lines).

31. Kincade testified that sewer gas can be an emergency that requires evacuation. **Exhibit F**, 22:6-12.

32. Additionally, because the Premises and the Ridgeway Residence are connected twin homes, BMFC attempted to gain entry to the Premises. **Exhibit F**, 20:9-18. The narrative of

BMFC's report reads: "Attempted to gain entry to 30 Garrett Ave [the Premises] by knocking on the door. The resident came to the door and locked it. Radnor PD assisted to gain entry and the resident came to the window. She informed the officer that she would not grant entry to PD or FD and that she had a lawsuit pending against the Radnor PD for a previous call and what she called unlawful search. She requested that PD call PECO and that PECO would be the only ones allowed in the building." **Exhibit E**.

33. Nowhere in the narrative does it state that BMFC entered the Premises. **Exhibit E**.

34. Contrary to the narrative's remarks regarding the Ridgeway Residence ("[c]hecked the residence and found no leaks") the remarks regarding the Premises state "[a]ttempted to gain entry." **Exhibit E**.

35. This is consistent with Kincade's testimony: Kincade testified that on June 8, 2019, he entered the Ridgeway Residence but not the Premises. **Exhibit F**, 15:13-16 (noting that he has "never" been inside the Premises).

36. Although she did not testify regarding BMFC, Rachel Ridgeway testified that she did not see the police go into the Premises during the June Incident. **Exhibit D**, 27: 9-13.

37. Hamilton did not testify in her deposition that BMFC entered the Premises during the June Incident. **Exhibit A**.

38. RTPD's report from the June Incident also supports the fact that BMFC did not enter the Premises on June 8, 2019. It reads, in relevant part: "Officers and BMFC knocked and announced several times prior to Karimu Hamilton opening the door. Hamilton denied BMFC and RTPD permission to enter the house and advised she would only allow Peco to check the property." *See* RTPD June 8, 2019 Report, p. 4, **Exhibit G**.

39. RTPD notified Peco, and Peco arrived at the Premises and checked for gas. **Exhibit G**. The Peco employee advised officers that the basement of the property was "covered in sewage." **Exhibit G**.

40. Nowhere does RTPD's report indicate that BMFC entered the Premises on June 8, 2019. **Exhibit G**. Rather, both RTPD and BMFC complied with Hamilton's wishes that only Peco enter her home. **Exhibit G**.

## LEGAL ARGUMENT

*Summary Judgment Standard*

41. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

42. With respect to a "genuine issue of material fact," "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Castillo v. Guzley*, 2022 WL 101922, *3 (E.D.P.A. Jan. 11, 2022) (slip copy) (citing *Anderson*, 477 U.S. at 257).

43. Although a court must consider the evidence in the light most favorable to the non-moving party, when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 378–80 (2007).

44. When considering a defendant's motion for summary judgment on a plaintiff's claim that his Fourth Amendment rights have been violated, courts require the plaintiff to "come forward with sufficient information that could be reduced to admissible evidence, which evidence in turn would permit the finder of fact to conclude that each element of his Fourth Amendment claim has been proven by a preponderance of the evidence." *See Pelino v. Gilmore*, 2021 WL 1037612, *1 (W.D.P.A. Mar. 18, 2021) (Slip Copy) (citing *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007)). Neither a colorable showing of a violation of the plaintiff's Fourth Amendment rights nor "reliance on speculation and conjecture" suffice to survive a motion for summary judgment. *See id*.

*Argument*

45. For the reasons set forth in more detail below, there is no genuine issue as to any material fact and BMFC is entitled to judgment as a matter of law because (a) BMFC did not violate Hamilton's Fourth Amendment rights on December 3, 2018, by entering the Premises without a warrant, because Hamilton consented to BMFC entering the premises; (b) BMFC did not violate Hamilton's Fourth Amendment rights on June 8, 2019, because BMFC did not enter the Premises, meaning there was no "search;" and (c) even if there was a "search" on June 8, 2019, BMFC's warrantless entry into the Premises would have been justified by exigent circumstances and therefore would not violate the Fourth Amendment.

**Summary Judgment Is Proper Because There Is
No Genuine Dispute as to Any Material Fact**

46. As will be discussed in greater detail below and as set forth in BMFC's Statement of Undisputed Facts, there is no genuine dispute as to the material facts that: (a) Hamilton

consented to BMFC's entry of the Premises on December 3, 2018; (b) BMFC did not enter the Premises on June 8, 2019; and (c) there were odors of gas and sewage present at the Premises and the adjoining Ridgeway Residence on June 8, 2019.

*Hamilton Consented to BMFC's Entry of the Premises on December 3, 2018*

47. As noted above, RTPD's records and Officer Patterson's testimony establish that Hamilton consented to have BMFC enter the Premises to check for gas. Additionally, Hamilton herself testified in her deposition that she knew the BMFC firefighters who were at the Premises on December 3, 2018, and that she let them into the Premises.

48. The fact that Hamilton consented to BMFC's entry into the Premises is material because although BMFC did not have a warrant to enter the Premises, consent is an established exception to the Fourth Amendment's warrant requirement, as will be discussed in greater detail below.

49. In addition, there is no evidence that Hamilton's consent to BMFC's entry was anything but voluntary. From Hamilton's testimony, it appears that because she knew the BMFC firefighters, she felt comfortable allowing them into her home to check for gas. Hamilton does not allege that BMFC coerced her into providing consent, nor do Officer Patterson's testimony or the RTPD reports support such a finding.

50. Further, there is no genuine issue as to the fact that Hamilton consented to BMFC's entry into the Premises on December 3, 2018. There is strong support in the record for this fact, including Hamilton's own sworn deposition testimony. Accordingly, no reasonable jury could return a verdict for Hamilton on the issue of consent.

*BMFC Did Not Enter the Premises on June 8, 2019*

51. As recited in detail above, on June 8, 2019, R. Ridgeway called RTPD and BMFC to the Ridgeway Residence after smelling an odor of gas.

52. BMFC arrived and first searched the Ridgeway Residence. That search revealed that the odor of gas—as well as an additional odor of smoke—appeared to be coming from the Premises.

53. As such, BMFC and RTPD approached the Premises and knocked on the door in an attempt to gain entry to further investigate the odors of smoke and gas. Hamilton locked the door and informed BMFC and RTPD that she would only allow entry to Peco. BMFC then left the Premises with Hamilton in pursuit, filming them and shouting obscenities.

54. RTPD called Peco, who arrived a short time later and conducted gas readings within the Premises.

55. BMFC does not state that they entered the Premises. RTPD does not state that BMFC entered the Premises. Except for conclusory statements in the Third Amended Complaint, Hamilton does not state that BMFC entered the Premises.

56. Whether BMFC even entered the Premises is a material fact because no "search" can occur for purposes of the Fourth Amendment unless an individual's reasonable expectation of privacy is violated.

57. If BMFC did not enter the Premises—which BMFC contends is the case and which is strongly supported by the record—then Hamilton cannot establish that any reasonable expectation of privacy that she may have had was violated. BMFC's actions of knocking on Hamilton's front door and asking for entry, then leaving when she denied such entry, do not violate any reasonable expectation of privacy.

58. As noted above, based on the record, no reasonable jury could find that BMFC "searched" the Premises on June 8, 2019. Hamilton did not testify at her deposition that BMFC entered the Premises, nor has she advanced any other evidence suggesting that BMFC entered the Premises.

*There Were Odors of Gas and Sewage Present at the Premises*
*and the Adjoining Ridgeway Residence on June 8, 2019*

59. The record is also clear that there were odors of sewage and smoke present at the Premises on June 8, 2019.

60. R. Ridgeway called 911 because she smelled sewage.

61. BMFC's incident report indicates that there was a "strong odor of sewer gas" when BMFC arrived at the scene.

62. Kincade testified that he smelled sewage at the Ridgeway Residence and that if he smelled it there, the odor must have also been present in the Premises.

63. There was also an odor of smoke at the Premises. BMFC was informed in the dispatch that there was an odor of smoke. Kincade, who was present at the Ridgeway Residence, smelled smoke and something that smelled like burning.

64. Further, BMFC believed that both of these odors were coming from the Premises. BMFC entered the Ridgeway Residence and did not pick up any gas readings. Kincade believed that there was a plumber working on sewer lines in the Premises, which would account for the burning smell and the odor of sewage.

65. Additionally, as was later revealed by Peco's entry into the Premises, the basement of the Premises was "covered in sewage."

66. The fact that there were odors of gas and sewage at the Premises on June 8, 2019 is material because these odors created exigent circumstances. As will be discussed in greater detail

below, the Fourth Amendment's warrant requirement may be excused when exigent circumstances exist. Based on the record, no reasonable jury could find that there was no odor of sewage and/or smoke at the Premises on June 8, 2019.

**Summary Judgment Is Proper Because BMFC Is
Entitled to Judgment as a Matter of Law**

67. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

68. Because the Fourth Amendment protects against unreasonable searches and seizures, the threshold question when analyzing a Fourth Amendment claim is whether there was a search or seizure. *See Minnesota v. Carter*, 525 U.S. 83, 92–93 (1998) (J. Scalia Concurrence) (referring to "the threshold question whether a search or seizure covered by the Fourth Amendment has occurred").

69. A search "occurs when an expectation of privacy that society is prepared to consider as reasonable is infringed." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984).

70. "Private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable." *U.S. v. Karo*, 468 U.S. 705, 714 (1984).

71. Accordingly, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).

*BMFC Did Not Violate Hamilton's Fourth Amendment Rights on
December 3, 2018 by Entering the Premises Without a Warrant Because
Hamilton Consented to BMFC Entering the Premises*

72. BMFC is entitled to judgment as a matter of law with respect to the December Incident because the facts of the December Incident plainly fit into the consent exception to the Fourth Amendment's warrant requirement.

73. The Fourth Amendment warrant requirement is excused under certain circumstances, including searches incident to a lawful arrest, objects in plain view of the officers, and exigent circumstances. *See Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) (internal citations omitted).

74. Another exception to the warrant requirement is a search that is conducted with the homeowner's consent. *See Bostrom v. New Jersey Div. of Youth & Family Services*, 969 F.Supp.2d 393, 406 (D.N.J. 2013) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)).

75. Consent "must be given voluntarily and must not be the result of coercion, express or implied." *See Bostrom*, 969 F.Supp. 2d at 406 (citing *Schneckloth*, 412 U.S. at 248). "Voluntariness is a question of fact to be determined from all the circumstances." *Schneckloth*, 412 U.S. at 248–49.

76. Hamilton consented to BMFC entering the Premises on December 3, 2018.

77. Thus although a warrantless entry into an individual's home is presumptively unreasonable and therefore violative of the Fourth Amendment's prohibition against unreasonable searches and seizures, BMFC's entry into the Premises on December 3, 2018, did not violate Hamilton's Fourth Amendment rights because it was premised on Hamilton's voluntary consent.

78. As such, BMFC is entitled to judgment as a matter of law with respect to Hamilton's allegation that BMFC's December 3, 2018 entry violated her Fourth Amendment rights.

*BMFC Did Not Violate Hamilton's Fourth Amendment Rights on*
*June 8, 2019 Because BMFC Did Not Enter the Premises, Meaning There Was No "Search"*

79. BMFC is entitled to judgment as a matter of law with respect to the June Incident because no search occurred, meaning it would be impossible for BMFC to violate Hamilton's Fourth Amendment rights.

80. As noted above, a search occurs for purposes of the Fourth Amendment when "an expectation of privacy that society is prepared to consider as reasonable is infringed." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984).

81. Because individuals have a reasonable expectation of privacy with respect to their own homes, "searches and seizures inside a home without a warrant are presumptively unreasonable." *See Payton v. New York*, 445 U.S. 573, 586 (1980).

82. Here, as detailed above, there is no evidence that BMFC entered the Premises on June 8, 2019 or otherwise violated some reasonable expectation of privacy held by Hamilton. Thus, there was plainly no "search" as that term is defined under the Fourth Amendment.

83. BMFC is therefore entitled to judgment as a matter of law because BMFC could not have violated Hamilton's Fourth Amendment rights without conducting a search or seizure.

*Even If There Was a "Search" on June 8, 2019, BMFC's Warrantless Entry*
*Into the Premises Would Have Been Justified by Exigent Circumstances and*
*Therefore Would Not Violate the Fourth Amendment*

84. Although it is BMFC's contention that BMFC did not enter the Premises on June 8, 2019, and that summary judgment is therefore appropriate with respect to the June Incident,

*even if* Hamilton had established that BMFC entered the Premises, such entry would not have violated the Fourth Amendment because it would have been justified by exigent circumstances.

85. As noted above, one exception to the Fourth Amendment's warrant requirement is exigent circumstances. Further, "[o]ne exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).

86. Accordingly, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *See id.*

87. When determining whether exigent circumstances exist, courts look not to an officer's subjective motivations, but to whether the "circumstances, viewed objectively, justify [the] action." *See id.* (quoting *Scott v. U.S.*, 436 U.S. 128, 138 (1978)).

88. Although it is BMFC's position that BMFC did not enter the Premises on June 8, 2019, even if BMFC did enter the Premises, such entry would have been justified by exigent circumstances.

89. As stated in greater detail above, on June 8, 2019, BMFC noted odors of smoke and sewer gas. These odors were noted from the Ridgeway Residence, a twin home connected to the Premises. Because BMFC did not locate the source of these odors at the Ridgeway Residence, BMFC sought access to the Premises to further investigate.

90. As Kincade testified, sewer gas can be an emergency that requires evacuation. In addition, it is well known that smoke can be an emergency that requires evacuation, as it often indicates the presence of fire.

91. Although there was apparently no fire at the Premises on June 8, 2019 (the Peco employee who eventually entered the Premises noted only that the basement was "covered in sewage"), it was objectively reasonable for Kincade and BMFC, given that they smelled smoke and sewer gas, to decide that entry into the Premises was necessary to protect from imminent injury. Although they did not see smoke, BMFC reasonably believed that there could be a fire or gas leak in the Premises, both of which could be harmful to Hamilton, the Ridgeways, and others in the vicinity of the Premises.

92. Accordingly, because exigent circumstances existed, if BMFC entered the Premises on June 8, 2019, such entry would not have violated the Fourth Amendment, as it would have fallen under the exigency exception to the warrant requirement.

## CONCLUSION

93. For the reasons set forth above, BMFC contends that there is no genuine issue as to any material fact and BMFC is entitled to judgment as a matter of law because (a) BMFC did not violate Hamilton's Fourth Amendment rights on December 3, 2018, by entering the Premises without a warrant, because Hamilton consented to BMFC entering the premises; (b) BMFC did not violate Hamilton's Fourth Amendment rights on June 8, 2019, because BMFC did not enter the Premises, meaning there was no "search;" and (c) even if there was a "search" on June 8, 2019, BMFC's warrantless entry into the Premises would have been justified by exigent circumstances and therefore would not violate the Fourth Amendment.

WHEREFORE, BMFC respectfully requests that this Court enter judgment in its favor.

Dated: Philadelphia, PA
March 1, 2023

                                                  WADE CLARK MULCAHY LLP

                                                  */s/ Robert J. Cosgrove*

                                                  Robert J. Cosgrove
                                                  *Attorneys for Bryn Mawr*
                                                  *Fire Company*
                                                  1515 Market Street, Suite 2050
                                                  Philadelphia, PA 19102